■ ELIZABETH A. LAWSON, Appellant, v RAEF A. LAWSON, Respondent. [732 NYS2d 753] —Mugglin, J. Appeal from a judgment of the Supreme Court (Seibert, Jr., J.) ordering, inter alia, equitable distribution of the parties' marital property, entered August 14, 2000 in Saratoga County, upon a decision of the court.

Plaintiff, age 49, and defendant, age 47, were married on

June 16, 1979. Defendant left the marital residence in June 1998 and plaintiff commenced this action for divorce in July 1999. Following a nonjury trial, Supreme Court granted plaintiff a divorce on the ground of abandonment. Pursuant to the decree, plaintiff was awarded custody of the parties' daughter and defendant was ordered to provide support for both the daughter and his emancipated son, a college student. Defendant was also ordered to pay maintenance in the amount of $1,000 per month for five years, retroactive to plaintiff's pendente lite application. The court also determined equitable distribution of the marital assets, that expert witness expenses should be shared by the parties, and that counsel fees should be separately borne by each. Plaintiff appeals.

Plaintiff's first contention is that Supreme Court erroneously found that the increase in value of defendant's separate property interest in two corporations was entirely passive and, therefore, the increase was not distributable. "[A]n increase in the value of separate property of one spouse, occurring during the marriage and prior to the commencement of matrimonial proceedings, which is due in part to the indirect contributions or efforts of the other spouse as homemaker and parent, should be considered marital property" (*Price v Price*, 69 NY2d 8, 11). However, "where the appreciation is not due, in any part, to the efforts of the titled spouse but to the efforts of others or to unrelated factors including inflation or other market forces * * * the appreciation remains separate property" (*id.*, at 18). In order to find that appreciation in separate property is a marital asset where, as it is in this case, the claim is predicated on the nontitled spouse's indirect contributions, "*some* nexus between the titled spouse's active efforts and the appreciation in the separate asset is required" (*Hartog v Hartog*, 85 NY2d 36, 46 [emphasis in original]). "[W]here an asset, like an ongoing business, is, by its very nature, nonpassive and sufficient facts exist from which the fact finder may conclude that the titled spouse engaged in active efforts with respect to that asset, *even to a small degree*, then the appreciation in that asset is, to a proportionate degree, marital property. By considering the extent and significance of the titled spouse's efforts in relation to the active efforts of others and any additional passive or active factors, the fact finder must then determine what percentage of the *total appreciation constitutes marital property*

subject to equitable distribution" (*id.*, at 48-49 [citations omitted] [emphasis in original]).*

The two corporations at issue, Woodside Center Corporation and 60-19 Roosevelt Avenue Corporation, are both family-owned real estate holding corporations based in Queens County. Woodside Center Corporation owns a building which is occupied pursuant to a long-term lease by the United States Postal Service. 60-19 Roosevelt Avenue Corporation owns two commercial buildings occupied by retail establishments and offices. Defendant owns 8.3% of the first corporation and 14% of the second. We credit defendant's clear and unequivocal testimony, as well as that of his mother, that he at no time has participated in the management of either of these corporations. Notably, both corporations employ independent accountants and managers. Plaintiff cites to defendant as having, earlier in the marriage, provided some bookkeeping services to one of these corporations, his preparation of an estate succession plan with respect to the other corporation, his development of a computer database used to report the business activities of these corporations to his extended family, and his general discussions from time to time with his mother concerning these corporations as evidence which establishes a nexus between defendant's active efforts and the appreciation of these assets. Plaintiff's claim does not withstand analysis.

The estate succession plan and the computer database are totally unrelated to the business of the corporations and were undertaken only for the benefit of the shareholders (defendant and his relatives). Defendant's other activity was shown by the evidence to have been either so routine (bookkeeping services) or so general (discussions with his mother) that they provide no nexus to the appreciation of these assets. Moreover, pursuant to Treasury Revenue Ruling 59-60, the evaluator, who was jointly retained by the parties, determined the increase in value of these real estate holding companies by subtracting the appraised value of the real property at the beginning of the valuation period from its appraised value at the end of that period. As is apparent, this increase may be entirely attributable to market forces or other factors of a similarly passive nature. As the nontitled spouse, plaintiff bore the burden of proving that

* The decisions in both *Price* and *Hartog* concern the valuation of either retail or wholesale mercantile businesses of a nonpassive nature. Notably, the husband in *Price* was also the owner of a corporation which held title to the real estate in which his mercantile business operated. The Court of Appeals expressed no view as to whether the wife could assert any claims to appreciation in value of this corporation as such claims constituted "matters of proof for the trial court" (*Price v Price, supra*, at 18 n 4).

the increase in value of these concededly separate property assets was due, at least in some degree, to the active effort of her titled spouse (*see, e.g., Burgio v Burgio*, 278 AD2d 767, 769; *Allen v Allen*, 263 AD2d 691, 691-692). In the absence of such proof, we cannot conclude that Supreme Court erred in determining that the increase in value of defendant's interest in these two corporations remained his separate property.

Supreme Court's equitable distribution of RD Graphics L. L. C. is more problematic. This corporation, as well as those hereinabove discussed (and other things not at issue herein), were all evaluated by the jointly retained appraiser whose report was stipulated into evidence by the parties. RD Graphics L. L. C. is solely owned by defendant, and was formed on January 1, 1999 (six months before the commencement of the action but after the parties had separated). RD Graphics L. L. C. purchased RD Graphics Printing Plus for $125,000. World Class Graphics L. L. C., a corporation owned jointly by the parties, leased its equipment to RD Graphics L. L. C. and this lease was capitalized at $145,250. World Class Graphics L. L. C., while still technically in existence, is a shell. The jointly retained appraiser, on the summary sheet, assigned a valuation of zero to RD Graphics L. L. C. In the narrative portion of the report, the appraiser reveals that in valuing this asset, he used two methods, one described as a market transaction evaluation and the other as an asset-based evaluation. In the former, since the business was created shortly before the divorce action was commenced and since the equipment purchased was appraised at approximately $25,000, the business appraiser assigned the balance of the purchase price of $100,000 to goodwill. Since the entire purchase price of $125,000 was entirely financed, a valuation of zero was assigned to this asset. However, using the asset-based evaluation, which employed a more standard form balance sheet, a comparison of adjusted asset value to liabilities resulted in a negative valuation of this corporation of $224,348.

In distributing this asset, Supreme Court did not rely on the opinion that the asset was worth zero. Instead, Supreme Court (having found that the leased assets of World Class Graphics were the joint property of the parties and having ordered these sold and the proceeds equally divided) subtracted the adjusted value of the leased printing equipment ($120,500) from the deficit value of $224,348 and gave defendant credit in equitable distribution for the balance of $103,848, which had the net effect of reducing plaintiff's share.

Although the stipulation entering the joint appraisal in evi-

dence is not a model of clarity, we start our analysis with what we perceive to be the well-founded presumption that the parties would not have jointly retained an appraiser and would not have stipulated the report in evidence unless they intended to be bound by the valuations therein. Nevertheless, with respect to this asset, the appraiser furnished two valuations, from which Supreme Court fashioned a distribution. Given a choice of values, Supreme Court opted to rely on the report which had been stipulated into evidence in determining the value of this asset (*see, e.g., Phelps v Phelps*, 199 AD2d 608, 609). Having ordered the leased equipment belonging to World Class Graphics separately sold, Supreme Court was entirely justified in removing the value of this asset from the balance sheet of RD Graphics L. L. C. and reducing the net tangible operating assets deficit accordingly. We conclude, nevertheless, that Supreme Court erred in assigning this deficit to defendant.

First, we conclude that the record discloses that the intent of the parties was to be bound by the valuations shown on the summary sheet and defendant, having stipulated to a zero valuation for this asset, is bound by his agreement. Moreover, while this corporation was created during the term of the marriage and is therefore technically marital property, we perceive that in equitable distribution, defendant should receive no credit for this deficit. He created this corporation, borrowed the money to purchase a competing business, borrowed substantial additional funds from his mother and related corporations, and leased the equipment from the parties' joint business, all without consultation with, or approval from, plaintiff. Under such circumstances, we hold that he should not receive this credit and that this business should be distributed as if its value is zero, and we hereinafter modify the distributive award to reflect this change.

Next, with respect to the issue of maintenance, plaintiff contends that she is receiving too little for too short a period of time. It is well settled that the amount and duration of maintenance are issues to be resolved by the trial court in the exercise of sound discretion (*see, Pratt v Pratt*, 282 AD2d 941, 941; *Moschetti v Moschetti*, 277 AD2d 838, 838; *Sawyer v Sawyer*, 268 AD2d 929, 930-931). To properly exercise its discretion, Supreme Court must consider the relevant statutory factors (*see*, Domestic Relations Law § 236 [B] [6] [a]; *Spenello v Spenello*, 274 AD2d 822, 823; *Nielson v Nielson*, 259 AD2d 916, 917). After considering the length of this marriage, the standard of living enjoyed by the parties, the earnings of defendant, plaintiff's educational and employment history and

potential, and the circumstances surrounding the unemancipated child, Supreme Court awarded maintenance in the sum of $1,000 per month for a period of five years. We find no abuse of Supreme Court's discretion either as to amount or duration (*see, Szemansco v Szemansco,* 285 AD2d 851; *Atweh v Hashem,* 284 AD2d 216, 217; *Sawyer v Sawyer, supra,* at 930-931). Notably, defendant is required to contribute child support in the amount of $810 biweekly for the unemancipated child until 2004, when she will be 21. Moreover, it is not unreasonable to expect plaintiff to utilize her Master's degree in Business Administration to become self-supporting within the five-year period.

We note that the award of maintenance should have been retroactive to the date of the commencement of the action, that being the earliest date on which plaintiff requested an award (*see,* Domestic Relations Law § 236 [B] [6] [a]; *Spenello v Spenello, supra,* at 823-824; *Petrie v Petrie,* 124 AD2d 449, 451, *lv dismissed* 69 NY2d 1038). As to plaintiff, this error is harmless as she was awarded maintenance for a fixed term and starting it earlier would merely end it earlier. As to defendant, if the maintenance award were to start at the date of the commencement of the action, he would be entitled to credit for sums voluntarily paid between that date and the date when maintenance pendente lite was awarded. Having taken no appeal from the divorce decree, however, he is not entitled to any relief.

Next, plaintiff contends that Supreme Court erred by determining that expert witness expenses should be shared by the parties and that counsel fees should be separately borne by the parties. Counsel fees and expert witness fees are awarded in the exercise of the court's discretion, considering the circumstances of the parties and the case (*see,* Domestic Relations Law § 237 [a]; *Petrie v Petrie, supra,* at 451-452). It is apparent from Supreme Court's findings of fact that it considered the parties' financial situation prior to making the determination with respect to counsel fees and expert witness fees, and we perceive no abuse of this discretion.

Finally, we reject the balance of plaintiff's assertions as being without merit. Plaintiff failed to raise any issue concerning judicial supervision of the sale of the jointly owned assets of World Class Graphics so this issue has not been preserved for appeal (*see, e.g., Larson v Albany Med. Ctr.,* 252 AD2d 936, 938-939; *B.J. 96 Corp. v Mester,* 222 AD2d 798, 799). We also find no error in Supreme Court's failure to order defendant to maintain life insurance to secure the awards of child support

and maintenance considering the durational nature of the maintenance award (*see, Pejo v Pejo*, 213 AD2d 918, 919, *lv denied* 85 NY2d 811), and the length of defendant's obligation for child support (*see, Kosovsky v Zahl*, 257 AD2d 522, 523).

Cardona, P. J., Peters, Spain and Carpinello, JJ., concur. Ordered that the judgment is modified, on the law and the facts, without costs, by establishing the value of RD Graphics L. L. C. for the purposes of equitable distribution at zero, by amending the distributive award from $16,673.72 to $68,597.72 which defendant shall pay plaintiff, after credit for any sums paid against the distributive award made in the judgment herein appealed, by paying the balance, together with interest at the rate of 9% per annum, in 60 equal monthly installments, and, as so modified, affirmed.