■ MARGARET CORASANTI, Appellant-Respondent, v JAMES G. CORASANTI, Respondent-Appellant. [744 NYS2d 614] —Appeal and cross appeal from a judgment of Supreme Court, Erie County (Sconiers, J.), entered April 7, 2000, which, inter alia, dissolved the marriage between plaintiff and defendant and equitably distributed the marital property.

It is hereby ordered that the judgment so appealed from be and the same hereby is unanimously modified on the law by providing in the sixth decretal paragraph that child support is retroactive to February 17, 1994 and as modified the judgment is affirmed without costs and the matter is remitted to Supreme Court, Erie County, for further proceedings in accordance with the following memorandum: Plaintiff appeals and defendant cross-appeals from a judgment of divorce that, inter alia, equitably distributed the marital property, determined that certain property was separate property of the respective parties, and awarded child support and maintenance. Plaintiff contends that Supreme Court should have applied the statutory percentage to defendant's entire income of $250,000 in determining child support, while defendant contends that the court should have used the statutory cap of $80,000. We conclude that the court did not abuse its discretion in setting a cap of $215,000 for the combined parental income. Defendant is a board-certified gastroenterologist who earned $250,000 per year when the divorce action was commenced in 1994, and the court properly set forth the factors it considered in deviating from the statutory cap of $80,000 (*see generally Matter of Cassano v Cassano,* 85 NY2d 649, 655; *cf. Matter of Gianniny v Gianniny,* 256 AD2d 1079, 1080; *Lester v Lester,* 237 AD2d 872, 873). The court erred, however, in failing to direct that defendant's payment of child support be retroactive to the date of the commencement of the action (*see* Domestic Relations Law § 236 [B] [7] [a]; *Panek v Panek,* 231 AD2d 959). We therefore

modify the judgment by providing in the sixth decretal paragraph that child support is retroactive to February 17, 1994, and we remit the matter to Supreme Court, Erie County, to determine an appropriate order for the payment of arrears.

Contrary to plaintiff's contention, the award of maintenance for a period of three years at the same rate at which temporary maintenance had been paid for a period of three years was not an abuse of the court's discretion (*see generally Boughton v Boughton,* 239 AD2d 935, 935). Nor was the court's award of counsel fees and expert witness fees to plaintiff an abuse of discretion (*see generally* Domestic Relations Law § 237). We further conclude that the court properly determined that, because plaintiff was unable to trace the source of funds in an account that she claimed was separate property, the account was marital property (*see Haas v Haas,* 265 AD2d 887, 888). We reject the contention of defendant in his cross appeal that the court erred in determining that certain financial gifts to the parties from their families constitute separate property and in crediting the respective parties with that separate property in the distribution of assets.

Contrary to the contention of plaintiff, the court did not abuse its discretion in awarding her 30% of the value of the enhanced earnings attributable to defendant as a result of his medical license; defendant also has a PhD in biochemistry. At the time of the marriage in 1980, defendant had completed much of the course work required for his PhD and had completed his first year of medical school. Defendant completed his medical degree, his doctoral work and a three-year postdoctoral fellowship during the marriage. Plaintiff had obtained her Bachelor of Science degree in business administration prior to the marriage. She worked as an assistant manager of a drug store at the time of the marriage but, after the birth of the parties' second child, she left her employment and except for an occasional part-time job remained at home to raise the children. It is undisputed that plaintiff managed the finances and the household, and was the primary caretaker of the children. However, as the court noted, while in medical school defendant tutored other students and worked at night in an area hospital. Defendant also supplemented the stipend he received from the fellowship program by working at night in area hospitals. Here, although plaintiff's efforts certainly contributed to the ability of defendant to obtain his medical license and advanced degrees, those achievements were accomplished primarily through defendant's " 'own ability and herculean effort' * * * 'as well as [his] own capacity for hard work' " (*Brough v Brough,* 285 AD2d 913, 916).

We reject plaintiff's contention that the court erred in crediting the opinion of defendant's expert with respect to the value of defendant's enhanced earning capacity. We also reject defendant's contention that the court erred in accepting one option proposed by defendant's expert over another option. We conclude that the court did not abuse its discretion in determining the value of the enhanced earnings asset as $1,019,928. Nor did the court abuse its discretion in calculating plaintiff's share of that asset. The court properly guarded "against duplication in the form of maintenance awards that are premised on earnings derived from professional licenses" (*McSparron v McSparron,* 87 NY2d 275, 286, *rearg dismissed* 88 NY2d 916).

In determining that the total value of the enhanced earnings asset is $1,019,928, the court used 77%, or $192,500, of defendant's total income stream of $250,000. "Once a court converts a specific stream of income into an asset, that income may no longer be calculated into the maintenance formula and payout. * * * Where license income is considered in setting maintenance, a court can avoid double counting by reducing the distributive award based on that same income * * *. On the other hand, there may be cases where it is more equitable to avoid double counting by reducing the maintenance award" (*Grunfeld v Grunfeld,* 94 NY2d 696, 705 [internal citations omitted]). Here, to avoid double counting, the court deducted $195,195, which is 77% of the total maintenance award of $253,500, from plaintiff's distributive award of $305,978 (30% × $1,019,928), which resulted in a distributive award to plaintiff in the amount of $110,783 and a maintenance award of $253,500.

Plaintiff urges this Court to use the formula set forth in *Reczek v Reczek* (239 AD2d 867) in determining the distributive award to which she is entitled based on defendant's enhanced earning capacity. In *Reczek,* we reduced the total value of the enhanced earnings by the total amount of the maintenance award and then made an equitable distribution of the balance. The formula used in *Reczek,* however, does not prevent the double counting of defendant's income (*see McSparron,* 87 NY2d at 286). The *Reczek* formula fails to reduce the total amount of maintenance by the percentage of maintenance that is paid from the income stream used in determining the value of the enhanced earnings asset. In addition, the formula used in *Reczek* fails because the deduction used in order to avoid double counting is applied against the total value of the enhanced earnings asset, rather than against

only the plaintiff's distributive award (*see Grunfeld,* 94 NY2d at 705). Thus, we conclude that the formula used in *Reczek* to avoid double counting the same income stream should no longer be used. Present—Green, J.P., Hurlbutt, Scudder, Kehoe and Gorski, JJ.