NANCY J. SPILMAN-CONKLIN, Appellant, v BRADLEY I. CONKLIN, Respondent. [783 NYS2d 114]—

Mugglin, J. Appeal from a judgment of the Supreme Court (Rogers, J.), entered July 1, 2003 in St. Lawrence County, ordering, inter alia, equitable distribution of the parties' marital property, upon a decision of the court.

The parties to this matrimonial action were married in August 1988 and have one child born in October 1990. Although plaintiff commenced this action in August 1997, the bifurcated divorce trial did not commence until April 1999 when, on several days, Supreme Court heard the custody dispute. It was not

until August and September 2001 that the issues of child support and equitable distribution were tried. Ultimately, the parties were granted mutual divorces. Plaintiff was awarded custody of the child, defendant was ordered to pay child support in the amount of $1,093.28 per month, and the marital property was equitably distributed. Plaintiff appeals, contending that Supreme Court miscalculated defendant's income for purposes of child support and the court committed numerous errors in its equitable distribution decisions.

With respect to the issue of child support, we find no merit in plaintiff's argument that Supreme Court erred in not computing defendant's income separately for each year from 1997 through 2000 to account for variations. This argument is at variance with the statute which requires the court to use the gross income as it should have been reported on the most recent federal income tax return, as well as other income received (*see* Domestic Relations Law § 240 [1-b] [b] [5] [i], [iii]; *Holterman v Holterman*, 3 NY3d 1, 10 [2004]; *Matter of Brefka v Dobies*, 271 AD2d 876, 877 [2000], *lv denied* 95 NY2d 759 [2000]). We do find, however, that plaintiff is correct that Supreme Court erred in making its arithmetical calculations. Supreme Court found defendant's salary from his wholly owned insurance agency corporation to be $54,000. From this sum, Supreme Court correctly deducted $4,131 for FICA and Medicare taxes. In addition, Supreme Court determined that $4,320 in deferred compensation, $7,345 of nonpassive income, as well as $18,996 in perquisites paid by his corporation on his behalf, should be imputed to defendant for child support calculation purposes. Supreme Court calculated these sums to total $80,341 when, in fact, they total $84,661, a difference of $4,320 which leads to the conclusion that Supreme Court overlooked the deferred compensation amount in its calculations. As a result, defendant's income after the deductions for FICA and Medicare taxes is $80,530, and plaintiff's income is $24,934.50, for a combined parental income of $105,464.50, and defendant's proportional share is 76.3%. When the combined parental income is multiplied by 17%, child support is $17,928.96 and defendant's 76.3% share is $13,679.80 or $1,139.98 per month, $46.70 more than Supreme Court's calculation of $1,093.28.

This mathematical error also affects Supreme Court's determination to award defendant a credit for overpayment of child support pendente lite against day care expenses owed. Since the correct amount of child support is $1,139.98 per month and the pendente lite amount was $1,122 per month, rather than an overpayment for the 65 months at issue, defendant's payments

were actually $1,168.70 in arrears and plaintiff is entitled to this sum in addition to the day care expenses of $5,344.81.

With respect to the many equitable distribution issues raised by plaintiff, we make two preliminary observations. First, we recognize that property acquired during marriage is presumed to be marital and subject to equitable distribution (*see* Domestic Relations Law § 236 [B] [1] [c]). Second, however, we recognize that these parties entered into a prenuptial agreement which provides that all property owned by each party at the time of their marriage and subsequent to their marriage "shall be unequivocally 'separate property' [and] shall apply with like force and effect to any increase in the value of said property, including any exchange of said property for other property, whether by purchase . . . or otherwise." With this information as background, we address plaintiff's many claims concerning equitable distribution by first turning to her claim that the marital residence was not defendant's separate property. Supreme Court credited defendant's testimony that the first house in which the parties resided was listed in the prenuptial agreement as his separate property, that when this house was sold, he applied all the proceeds to purchase the second house and, when it was sold, all of the funds from its sale were applied toward building the third residence, which is the one in dispute. Defendant further testified that he mortgaged a camp which was his separate property and used that money toward the construction of the third home as well.

While not contesting these facts, plaintiff argues that the third house is marital property because she contributed physical labor to its construction and gave $10,000 from her premarital certificate of deposit for its furnishings. Supreme Court found plaintiff's testimony to be inconsistent and unreliable as she initially claimed to have contributed $27,000 for interior accessories and appliances, with $10,000 going toward actual construction, but later claimed all of this money went into the purchase of the second home. Moreover, plaintiff could furnish no documentary evidence of the existence of this money and, notably, it was not listed on the prenuptial agreement. Hence, we find no basis upon which to disturb Supreme Court's decision that the third home was traceable exclusively to defendant's separate property contributions (*see Zanger v Zanger*, 1 AD3d 865, 866-867 [2003]; *Butler v Butler*, 256 AD2d 1041, 1043 [1998], *lv denied* 93 NY2d 805 [1999]; *cf. Fessenden v Fessenden*, 307 AD2d 444, 445-446 [2003]). Even were we to credit plaintiff's testimony that she contributed physical labor to the construction of the residence, the prenuptial agreement

precludes her recovery for any increases in value to this separate property (*cf. Matwijczuk v Matwijczuk*, 261 AD2d 784, 785-786 [1999]; *Rider v Rider*, 141 AD2d 1004, 1005 [1988]).

Next, we find no error in Supreme Court having valued the parties' timeshare condominium in St. Martin at $3,800. Both parties listed this as the value in their statements of net worth and plaintiff included this value in her proposed findings of fact (*see Atkinson v Atkinson*, 289 AD2d 907, 910 [2001]). Plaintiff's claim that Supreme Court failed to include defendant's sale of land and a barn in 2000 is unpreserved for appellate review as it was not an issue raised at trial (*see Lawson v Lawson*, 288 AD2d 795, 800 [2001]).

Plaintiff also asserts that Supreme Court erred in not including as a marital asset the reduction of mortgage indebtedness in two of defendant's businesses (RM Conklin Agency, Inc. and Dodge Place Associates, Inc.) which occurred during the marriage. Although a party may be entitled to recover a portion of marital funds which are used to pay off debt incurred by the other spouse in acquiring separate property (*see Micha v Micha*, 213 AD2d 956, 958 [1995]), plaintiff submitted no evidence that marital funds were used to reduce either debt. In the absence of such evidence, Supreme Court correctly deemed any reduction in the debt to be separate property consistent with the prenuptial agreement (*cf. Alwell v Alwell*, 98 AD2d 549, 551 [1984]). With respect to Dodge Place Associates, moreover, defendant's uncontroverted testimony was that the reduction of debt came solely from income generated by that business. Conspicuously absent from plaintiff's proof also is any evidence concerning the balance of the debt with respect to the insurance agency at the time the action was commenced. Also, with respect to this business, plaintiff complains that Supreme Court improperly awarded her a share of defendant's accounts receivable as there is a long and uncertain distribution period with respect to these accounts due to defendant's control of the business and his ability to manipulate payments so as to avoid having his agency repay these accounts. As the distribution scheme treats both parties equally, we see no reason to disturb the exercise of Supreme Court's discretion with respect to this asset.

Next, plaintiff complains that Supreme Court erred in determining that part of a loan owed to defendant by the Conklin Agency is his separate property. Defendant's proof was undisputed that $34,000 of this loan was created when he transferred his separately owned 1996 Pontiac Bonneville to the corporation. Hence, Supreme Court correctly determined that portion of the loan to be his separate property.

With respect to Keystone Development, a real estate development company in which both parties had an interest, as reflected in his 1998 personal income tax return, defendant received a capital account distribution in the amount of $32,203. Plaintiff argues that Supreme Court erroneously considered this capital account withdrawal as a loss, rather than an asset. Defendant testified that this sum did not represent a cash withdrawal but rather a loss on the property due to expenses for maintenance, electricity and installation and building of roads. Plaintiff offered no contrary evidence, leaving Supreme Court free to credit defendant's testimony that the withdrawal constituted a loss (*see Goudreau v Goudreau*, 283 AD2d 684, 684-685 [2001]), and Supreme Court properly apportioned it 50% to each party.

Plaintiff also contends that defendant's 1988 Porsche constituted marital property as it was acquired during the marriage. Plaintiff, however, offered no evidence to overcome the provision in the prenuptial agreement that all property acquired by either spouse during the marriage would remain each spouse's separate property. Absent such proof, Supreme Court committed no error in determining the automobile to be defendant's separate property.

Plaintiff also asserts that Supreme Court erred in using the purchase price, rather than market price, to determine the value of jewelry given to her by defendant during the marriage. Plaintiff offered no proof of value, leaving Supreme Court free to credit defendant's testimony and apply that amount in distributing the property (*see Solomon v Solomon*, 307 AD2d 558, 560 [2003], *lv dismissed* 1 NY3d 546 [2003]; *Fuchs v Fuchs*, 276 AD2d 868, 869 [2000]).

Lastly, we find no merit to plaintiff's contention that Supreme Court improperly divided defendant's preretirement death benefit according to the formula found in *Majauskas v Majauskas* (61 NY2d 481 [1984]). The valuation of an asset and the manner of its distribution will not be disturbed absent a clear abuse of discretion (*see Corbett v Corbett*, 6 AD3d 766, 767 [2004]). We find no abuse of discretion in dividing any preretirement death benefits according to *Majauskas* (*see McCoy v Feinman*, 99 NY2d 295, 303 [2002]), particularly where, as here, plaintiff failed to provide an alternative plan for distribution (*cf. Keith v Keith*, 241 AD2d 820, 822 [1997]).

Cardona, P.J., Peters, Rose and Kane, JJ., concur. Ordered that the judgment is modified, on the law and the facts, without costs, by reversing so much thereof as ordered defendant to pay monthly child support in the amount of $1,093.28 and as

granted defendant a credit of $1,866.80 as against day care expenses; increase the child support payments to $1,139.98 and award plaintiff $1,168.70 in child support arrears; and, as so modified, affirmed.