■ LARRY G. MARTINSON, Appellant, v MICHELLE R. MARTINSON, Respondent. [821 NYS2d 537]—

Appeal from a judgment of the Supreme Court, Jefferson County (Richard V. Hunt, A.J.), entered June 20, 2005 in a divorce action. The judgment, among other things, distributed the marital assets.

It is hereby ordered that the judgment so appealed from be and the same hereby is modified on the law by vacating the 48th decretal paragraph and providing that plaintiff is directed to pay defendant $21,472 for her share of plaintiff's enhanced earning capacity, with interest at the rate of 9% per annum from February 4, 2005, and as modified the judgment is affirmed without costs, and the matter is remitted to Supreme Court, Jefferson County, for further proceedings in accordance with the following memorandum: On appeal from a judgment in an action for divorce and ancillary relief, plaintiff contends that

Supreme Court erred in its distribution of certain marital assets, including the parties' tax refund, a tax relief check, and the money remaining in an account set up for the parties' children. It is well settled that the provision in Domestic Relations Law § 236 (B) (5) (c) that marital property be "distributed equitably between the parties" does not require equal distribution (*see Arvantides v Arvantides*, 64 NY2d 1033, 1034 [1985]). "Moreover, the trial court is vested with broad discretion in making an equitable distribution of marital property and, absent an abuse of discretion, its determination will not be disturbed" (*Bossard v Bossard*, 199 AD2d 971, 971 [1993]). Here, the parties stipulated to the disposition of certain assets, and the record establishes that the court properly considered the factors set forth in Domestic Relations Law § 236 (B) (5) (d), including defendant's waste of marital assets, in distributing the named assets. Plaintiff failed to establish that the court abused its discretion in distributing those assets.

We agree with plaintiff, however, that the court erred in awarding defendant 40% of the value of the marital portion of plaintiff's enhanced earning capacity arising from plaintiff's obtaining, during the marriage, a license to practice as a physician's assistant. In light of defendant's modest contribution to the attainment of plaintiff's license, we conclude that the court should have awarded defendant only 20% of the value of the marital portion of plaintiff's enhanced earning capacity (*see Schiffmacher v Schiffmacher*, 21 AD3d 1386, 1387 [2005]). Consequently, we modify the judgment by vacating the 48th decretal paragraph and providing that plaintiff is directed to pay defendant $21,472 for her share of plaintiff's enhanced earning capacity, with interest at the rate of 9% per annum from February 4, 2005, and we remit the matter to Supreme Court to determine the duration and minimum amount to be paid per month on that amount.

All concur except Hayes, J., who is not participating, and Kehoe, J., who dissents in part and votes to affirm in the following memorandum.

Kehoe, J. (dissenting in part). I respectfully dissent in part. In my view, Supreme Court did not abuse or improvidently exercise its discretion in awarding defendant a 40% share of the marital portion of the enhanced earning capacity attributable to plaintiff's attainment during the marriage of two educational degrees and licensing as a physician's assistant. The Domestic Relations Law mandates that the equitable distribution of marital assets be based on the circumstances of the case and directs the trial court to consider a number of statutory factors, includ-

ing the income and property of each party at the time of marriage and at the time of commencement of the divorce action, the duration of the marriage, the age and health of the parties, any maintenance award, and the nontitled spouse's direct or indirect contributions to the marriage, including "services as a spouse, parent, wage earner and homemaker" (Domestic Relations Law § 236 [B] [5] [d] [6]; *see Holterman v Holterman*, 3 NY3d 1, 7-8 [2004]). The enumeration of those factors bespeaks the Legislature's recognition of marriage as an economic partnership with a significant noneconomic component (*see generally Price v Price*, 113 AD2d 299, 304-306 [1985], *affd* 69 NY2d 8 [1986]; *Capasso v Capasso*, 119 AD2d 268, 274 [1986], citing *O'Brien v O'Brien*, 66 NY2d 576, 585 [1985]). Those considerations "are particularly relevant when evaluating the parties' respective contributions to" one spouse's "attainment of a professional license," which "is marital property subject to equitable distribution" (*Holterman*, 3 NY3d at 8). The overriding "principle [is] that both parties in a matrimonial action are entitled to fundamental fairness in the allocation of marital assets, and that the economic and noneconomic contributions of each spouse are to be taken into account. Trial courts that examine the statutory factors are granted substantial discretion in determining the extent to which the distribution of marital property, including enhanced earnings attributable to a professional license, will be equitable" (*id.*). Moreover, as the majority notes, "absent an abuse of discretion, [the trial court's] determination will not be disturbed" (*Bossard v Bossard*, 199 AD2d 971, 971 [1993]; *see Holterman*, 3 NY3d at 8).

"Here, [the court] issued a careful, comprehensive decision addressing all relevant factors" (*Holterman*, 3 NY3d at 8), including the fact that the parties' 19-year marriage had produced five children, three of whom remained unemancipated; that defendant had given up her career as a licensed cosmetologist to stay at home with the children throughout the marriage, in keeping with the parties' Mormon religious beliefs; that the majority of plaintiff's schooling, a total of 91 credit hours leading to plaintiff's attainment of bachelor's and master's degrees as a physician's assistant, was completed during the marriage; and that defendant had waived her right to receive maintenance. In support of its determination, the court also might have cited the fact that plaintiff had joined the United States Army as an enlisted man $2^{1}/_{2}$ years after the marriage but by the time of commencement of the divorce action had attained the rank of captain; that plaintiff's choice of a military career had necessitated 14 moves by the family in 19 years; that plaintiff's military career culminated in a six-month deployment

to Iraq just prior to commencement of the divorce action; that plaintiff's education during the marriage was paid for by the Army, a form of intangible compensation that otherwise would constitute marital property; and that defendant, in addition to assuming a disproportionate share of the household and child rearing tasks, typed plaintiff's papers for college and graduate school. It also must be noted that, in awarding defendant only 40% of the marital portion (with a determined value of $107,360) of plaintiff's total enhanced earning capacity (with a stipulated value of $176,000), the court actually awarded defendant only about one quarter of the total enhanced earning capacity. In halving the award to defendant, the majority effectively awards her only a one-eighth interest in the total enhanced earning capacity of $176,000, despite the fact that both educational degrees and the physician's assistant license were earned during the marriage.

In my view, the determination of the court, much more so than the decision of the majority, accomplishes the ''core purpose of the *O'Brien* rule: to assure the nontitled spouse an equitable share of the license to which that spouse's efforts contributed'' (*McSparron v McSparron*, 87 NY2d 275, 282 [1995], *rearg dismissed* 88 NY2d 916 [1996]). I therefore conclude that the court properly awarded defendant 40% of the enhanced earning capacity achieved by plaintiff during the marriage (*see Holterman*, 3 NY3d at 7-9 [awarding nontitled spouse 35% of other spouse's enhanced earning capacity]; *Lipsky v Lipsky*, 276 AD2d 753 [2000] [50%]; *Reczek v Reczek*, 239 AD2d 867, 868 [1997] [35%], *abrogated on other grounds by Corasanti v Corasanti*, 296 AD2d 831 [2002]; *see also Krigsman v Krigsman*, 288 AD2d 189, 191 [2001] [50%]; *McNally v McNally*, 251 AD2d 302, 303 [1998] [50%]; *Vainchenker v Vainchenker*, 242 AD2d 620, 621 [1997] [50%]). Present—Scudder, J.P., Kehoe, Smith, Pine and Hayes, JJ.