# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**208**

**CA 12-00188**

PRESENT: SMITH, J.P., PERADOTTO, CARNI, VALENTINO, AND MARTOCHE, JJ.

---

JOSEPH LAUZONIS, PLAINTIFF-RESPONDENT,

                    V                                    MEMORANDUM AND ORDER

COLLEEN LAUZONIS, DEFENDANT-APPELLANT.

---

FLAHERTY & SHEA, BUFFALO (KATHLEEN E. HOROHOE OF COUNSEL), FOR
DEFENDANT-APPELLANT.

LEONARD G. TILNEY, JR., LOCKPORT, FOR PLAINTIFF-RESPONDENT.

-------------------------------------------------------------------------

      Appeal from a judgment of the Supreme Court, Niagara County
(Frank Caruso, J.), entered December 9, 2011 in a divorce action.  The
judgment, among other things, adjudged that plaintiff pay child
support to defendant in the amount of $275 per week.

      It is hereby ORDERED that the judgment so appealed from is
unanimously modified on the law by vacating the 5th and 17th decretal
paragraphs and providing that defendant shall receive one half of the
value of the Investacorp account as of the date of the commencement of
this action and as modified the judgment is affirmed without costs,
and the matter is remitted to Supreme Court, Niagara County, for
further proceedings in accordance with the following Memorandum:
Defendant wife appeals from a judgment that, inter alia, dissolved the
parties' marriage on the ground of cruel and inhuman treatment,
awarded the wife maintenance and child support, and distributed the
marital property.  Contrary to the wife's contention, we conclude that
Supreme Court did not err in imputing annual income in the amount of
$20,000 to her for purposes of calculating child support and
maintenance.  "Courts have considerable discretion to . . . impute an
annual income to a parent" (*Juhasz v Juhasz*, 59 AD3d 1023, 1025, *lv
dismissed* 12 NY3d 848 [internal quotation marks omitted]; *see Irene v
Irene* [appeal No. 2], 41 AD3d 1179, 1180), and a court's imputation of
income will not be disturbed so long as there is record support for
its determination (*see Sharlow v Sharlow*, 77 AD3d 1430, 1431; *Juhasz*,
59 AD3d at 1025).  Here, we conclude that the court did not abuse its
discretion in determining that the wife is capable of earning $20,000
a year based upon her education, qualifications, employment history,
past income, and demonstrated earning potential (*see Filiaci v
Filiaci*, 68 AD3d 1810, 1811; *Matter of Hurd v Hurd*, 303 AD2d 928, 928;
*Mayle v Mayle*, 299 AD2d 869, 869).

      We agree with the wife, however, that the court erred in failing
to distribute certain marital assets, i.e., an investment account, a

403-b deferred compensation account, and plaintiff husband's preretirement death benefits. With respect to the investment account, which the parties referred to as the "Investacorp account," there is no question that those funds constitute marital property. Both parties testified at trial that they refinanced the marital home in the spring of 2008, a few months before commencement of the divorce action, and invested the proceeds from the refinancing in the stock market. Indeed, the husband acknowledged at trial that the Investacorp account should be divided equally between the parties after he is reimbursed from that account for the amount he paid for the parties' custodial evaluator. The court, however, awarded the entire account balance to the husband on the ground that "the testimony and evidence is not enough to award the balance of said account to the [wife]." Where, as here, however, the property at issue is held jointly, "an equal disposition of that property should be presumptively in order, with the burden on the party seeking a greater share to establish entitlement" (Alan D. Scheinkman, Practice Commentaries, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law C236B:33; *see Diener v Diener*, 281 AD2d 385, 386; *see generally Swett v Swett*, 89 AD3d 1560, 1561-1562). Here, the husband did not overcome the presumption that the jointly titled property, i.e., the Investacorp account, should be divided equally between the parties (*see generally Murray v Murray*, 101 AD3d 1320, 1321; *Marshall v Marshall*, 91 AD3d 610, 612; *Ponzi v Ponzi*, 45 AD3d 1327, 1327-1328; *Boardman v Boardman*, 300 AD2d 1110, 1110). Thus, we agree with the wife that the court should have equitably distributed that marital asset (*see Leeds v Leeds*, 281 AD2d 601, 601-602, *appeal dismissed* 96 NY2d 858, *lv denied* 97 NY2d 602). We therefore modify the judgment by vacating the 17th decretal paragraph and directing that the wife shall receive one half of the value of the Investacorp account as of the date of the commencement of this action (*see generally Moody v Sorokina*, 40 AD3d 14, 20-21, *appeal dismissed* 8 NY3d 978, *reconsideration denied* 9 NY3d 887; *Bennett v Bennett*, 13 AD3d 1080, 1082-1083, *lv denied* 6 NY3d 708).

We likewise agree with the wife that at least a portion of the husband's 403-b account is marital property subject to equitable distribution and that the court therefore erred in failing to distribute that asset (*see Roehmholdt v Russell*, 272 AD2d 938, 940; *see generally Rosenkrantz v Rosenkrantz*, 184 AD2d 478, 479-480; *Matter of Trickel v Trickel*, 88 AD2d 741, 742). The husband made contributions to that account from his wages during the course of the marriage and thus, as the husband acknowledged at trial, the account should be divided equitably "pursuant to the formulas outlined by the courts" (*see DeLuca v DeLuca*, 97 NY2d 139, 144; *see generally Nugent-Schubert v Schubert*, 88 AD3d 967, 968). We therefore remit this matter to Supreme Court for equitable distribution of the husband's 403-b account (*see Roehmholdt*, 272 AD2d at 940).

We further agree with the wife that the court erred in failing to equitably distribute the husband's in-service death benefit, which was provided through the teacher retirement system. It is well settled that employment-based death benefits that accrue during the marriage

are marital property subject to equitable distribution (*see e.g. Ndulo v Ndulo*, 66 AD3d 1263, 1264; *Spilman-Conklin v Conklin*, 11 AD3d 798, 802; *see generally* Domestic Relations Law § 236 [B] [1] [c]; *Kazel v Kazel*, 3 NY3d 331, 334-335; *Majauskas v Majauskas*, 61 NY2d 481, 489-491; *Cowley v Cowley*, 15 AD3d 974, 976) and, contrary to the husband's contention, the court's award to the wife of a share of the husband's pension does not evidence its intent to grant the husband sole possession of his death benefit. Rather, it appears from the record that the court simply failed to consider the husband's preretirement death benefit when it equitably distributed the parties' assets (*see generally Rosenkrantz*, 184 AD2d at 479-480; *Trickel*, 88 AD2d at 742). We thus also remit this matter to Supreme Court for a determination of the value of the death benefit at the time of the commencement of this action and for the equitable distribution thereof (*see generally McDonald v McDonald*, 275 AD2d 1037, 1038; *Roehmholdt*, 272 AD2d at 940; *Knight v Knight*, 258 AD2d 955, 956). We note that, although the wife in her brief requested remittal of this matter for equitable distribution of certain mutual funds, which the parties referred to as the "Equine Financial/Washington Funds," the wife conceded at oral argument that those funds are the same as the Investacorp account.

The wife further contends that the court abused its discretion in failing to award her any portion of the husband's enhanced earnings from his master's degree, which he earned in part during the marriage. We agree, and we therefore remit this matter to Supreme Court for a determination of the appropriate percentage of those enhanced earnings that should be awarded to the wife. The record before us establishes that, at the very least, the wife made a "modest" contribution toward the husband's attainment of a master's degree and thus that she is entitled to some portion of his enhanced earnings (*Gallagher v Gallagher*, 93 AD3d 1311, 1314, *lv denied in part and dismissed in part* 19 NY3d 1022 [internal quotation marks omitted]; *see Martinson v Martinson*, 32 AD3d 1276, 1277; *Schiffmacher v Schiffmacher*, 21 AD3d 1386, 1387). Indeed, the record demonstrates that the parties married shortly after the wife graduated from college and that, at the time, the husband was teaching high school and had five years in which to obtain his master's degree. The wife testified that she put her own master's degree "on hold" while the husband pursued his degree. During that period of time, the wife substitute taught, performed household duties, and assisted the husband with his course work. In addition, the wife testified that she helped the husband by taking over his swim club, planning practices for the varsity swim teams he coached, and volunteering to coach those teams for him several times a week. Moreover, from 2000 through 2002, the wife worked part-time as the head coach of a university swim team and, from 2001 until May 2002, when the parties' first child was born, she worked full-time as an elementary school teacher.

With respect to the wife's contention concerning the award of child support, we note that we are unable to ascertain from the record before us how the court calculated the child support award in the amount of $275 per week and whether, as the wife contends, the court deducted maintenance from the husband's income before calculating his child support obligation (*see* Domestic Relations Law § 240 [1-b] [b]

[5] [vii] [C]).  We therefore further modify the judgment by vacating the 5th decretal paragraph, and we remit this matter to Supreme Court to determine the amount of the husband's child support obligation in compliance with the Child Support Standards Act (*see Vanyo v Vanyo*, 79 AD3d 1751, 1752; *Matter of Miller v Miller*, 55 AD3d 1267, 1268-1269; *Stanley v Hain*, 38 AD3d 1205, 1206-1207).  Finally, the wife contends that the court erred in failing to award her a money judgment for amounts owed by the husband to her pursuant to an order requiring him to pay $200 per week toward groceries during the pendency of this action.  We conclude that the court failed to determine what amounts, if any, the husband owes to the wife for arrears with respect to that order (grocery arrears).  The wife contended that, as of March 2010, the husband owed her $9,519.45 in grocery arrears, while the husband asserted at trial that he satisfied the order in full by making payments to the wife and by purchasing groceries for her.  In support of that assertion, the husband submitted copies of checks he sent to the wife, receipts from restaurants, and receipts for purchases of groceries and miscellaneous household items dated from December 29, 2008 until June 14, 2010.  Many of the receipts relate to purchases of non-grocery items or purchases made at fast-food establishments, and it is not evident from the record whether the husband's in-kind purchases coupled with the payments he made to the wife satisfied his grocery obligation in full.  We therefore remit this matter to Supreme Court to determine the amount of the grocery arrears, if any, owed to the wife and to award an appropriate money judgment for any such arrears (*see generally LiGreci v LiGreci*, 87 AD3d 722, 726-727; *Binette v Binette-Acker*, 18 AD3d 589, 590; *Lesch v Lesch*, 201 AD2d 900, 901, *lv dismissed* 87 NY2d 1055).

Finally, we note that, upon remittal, the court should hold a hearing with respect to the various issues to be decided, if necessary.

Entered:  April 26, 2013                        Frances E. Cafarell
                                                Clerk of the Court