# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**979**

**CA 12-01791**

PRESENT: SCUDDER, P.J., FAHEY, SCONIERS, AND VALENTINO, JJ.

---

GEORGE R. MARLINSKI, PLAINTIFF-RESPONDENT,

V                                          MEMORANDUM AND ORDER

NANCY A. MARLINSKI, DEFENDANT-APPELLANT.

---

LAW OFFICES OF STEVEN H. GROCOTT, WEST SENECA (STEVEN H. GROCOTT OF COUNSEL), FOR DEFENDANT-APPELLANT.

MICHAEL J. STACHOWSKI, P.C., BUFFALO (MICHAEL J. STACHOWSKI OF COUNSEL), FOR PLAINTIFF-RESPONDENT.

---

Appeal from a judgment of the Supreme Court, Erie County (Janice M. Rosa, J.), entered December 22, 2011 in a divorce action. The judgment, inter alia, equitably distributed the marital property of the parties.

It is hereby ORDERED that the judgment so appealed from is modified on the law by vacating the eighth and ninth decretal paragraphs and directing that the parties are jointly responsible for the remaining debt on the Discover Card line of credit and that defendant is not required to compensate plaintiff in the amount of $3,569 and as modified the judgment is affirmed without costs.

Memorandum: Defendant wife appeals from a judgment of divorce that, inter alia, equitably distributed marital assets, allocated marital debt and calculated the child support for the parties' minor children. Contrary to the wife's contention, Supreme Court did not abuse or improvidently exercise its discretion in determining that plaintiff husband was entitled to an equitable share of the marital funds used to discharge the mortgage on the wife's separate residence, which had been used as the marital residence for the entire duration of the marriage. As the court noted in its decision, the parties engaged in "complex financial dealings," which often consisted of acquiring new lines of credit to pay off existing lines of credit. The testimony at trial established that, although the wife purchased the marital residence prior to the marriage, the parties used marital funds to pay for improvements and to discharge the mortgage on that residence. The husband is thus "entitled to recoup [his] equitable share of the marital funds used to reduce the indebtedness and pay for improvements to the marital abode" (*Massimi v Massimi*, 35 AD3d 400, 402, *lv denied* 9 NY3d 801; *see Markopoulos v Markopoulos*, 274 AD2d 457, 458-459; *Zelnik v Zelnik*, 169 AD2d 317, 330).

We agree with the wife, however, that the court abused it discretion in awarding the husband $3,000, which represented one-half of the parties' 2008 tax refund. The entire tax refund had been used to pay down debt on a Discover Card line of credit. While it is undisputed that, after the divorce action was commenced, the wife took a cash advance from the Discover Card line of credit and deposited the money into her separate checking account, the evidence at trial established that the wife used that money to make payments toward marital debt. We thus conclude that the Discover Card debt was marital debt, and the husband was not entitled to credit for his share of the marital funds that were used to reduce that debt. We further conclude that the court abused its discretion in awarding the husband $569, the amount withdrawn by the wife from the parties' joint checking account in September 2008 and January 2009. The evidence at trial established that the wife used the money for household bills and also to reduce the Discover Card debt. We therefore modify the judgment accordingly.

Contrary to the wife's contention, the court did not err in vacating the child support and maintenance provisions of the parties' October 2009 stipulation. In that stipulation, the parties had agreed to impute income to the wife in the amount of $15,000, and the husband had agreed to maintenance and child support awards to the wife based on that imputed income. Although "[s]tipulations of settlement are favored by the courts and not lightly cast aside" (*Hallock v State of New York*, 64 NY2d 224, 230; *see Krupski v Krupski*, 168 AD2d 942, 943, *lv denied* 77 NY2d 804; *see generally* CPLR 2104), "[a] stipulation of settlement should be closely scrutinized and may be set aside upon a showing that it is unconscionable or the result of fraud, or where it is shown to be manifestly unjust because of the other spouse's overreaching" (*Cruciata v Cruciata*, 10 AD3d 349, 350; *see Krupski*, 168 AD2d at 943). We agree with the court that "a reasonable inference exists that the [wife did not] fully disclose[] h[er] financial assets . . . , and, as a result, the terms of the agreement were so inequitable as to be manifestly unfair to the [husband]" (*Cruciata*, 10 AD3d at 350; *see Chapin v Chapin*, 12 AD3d 550, 551; *cf. Label v Label*, 70 AD3d 898, 900; *see also Cervera v Bressler*, 85 AD3d 839, 841-842). It is undisputed that the wife had not been employed outside the home since the birth of the parties' children, but it is likewise undisputed that she had inherited large sums of money during the course of the marriage. Moreover, the wife failed to disclose her significant stock earnings, which, by October 2009, had totaled over $48,000 for that year. By the end of 2009, the wife had an adjusted gross income of $121,901. Thus, the wife had over $100,000 more in income than was imputed to her in the stipulation, and her income was more than two times what the husband had earned in any of the years before the stipulation. We thus conclude that, regardless whether the wife can be said to have committed fraud, the wife's failure to disclose her earnings in the stock market resulted in an agreement that was manifestly unfair to the husband.

The wife further contends that, after partially vacating the stipulation, the court erred in imputing an annual income of $50,000 to her. We reject that contention. The court did not abuse its

discretion in considering the wife's gross income as "reported in the most recent federal income tax return" (Domestic Relations Law § 240 [1-b] [b] [5] [i]), including investment income (*see* § 240 [1-b] [b] [5] [ii]), as well as "such other resources as may be available to the [wife]" (§ 240 [1-b] [b] [5] [iv]), including non-income producing assets such as real property she inherited (*see* § 240 [1-b] [b] [5] [iv] [A]) and money, goods or services provided by relatives and friends (*see* § 240 [1-b] [b] [5] [iv] [D]), such as the large monetary gifts provided to her by family members. While the wife contends that her capital gains in 2009 are an anomaly that is not likely to recur, we conclude that the court properly took into consideration the volatility of the stock market when it imputed less than half of the wife's actual earnings to her as annual income. The decision whether to consider capital gains as income is a discretionary determination (*see Orofino v Orofino*, 215 AD2d 997, 998-999, *lv denied* 86 NY2d 706; *compare Matter of Gluckman v Qua*, 253 AD2d 267, 270, *lv denied* 93 NY2d 814 *with McFarland v McFarland*, 221 AD2d 983, 983-984) and, under the circumstances of this case, we see no basis upon which to disturb the court's exercise of its discretion.

We have reviewed the wife's remaining contentions and conclude that they are lacking in merit.

All concur except SCONIERS, J., who dissents and votes to modify in accordance with the following Memorandum: I agree with the majority with respect to all but two of the issues being decided on this appeal, and I therefore respectfully dissent in part. In my view, Supreme Court erred to the extent it vacated a portion of the parties' partial settlement and also erred when it imputed an annual income of $50,000 to defendant wife. I would therefore further modify the judgment accordingly.

On October 21, 2009, the parties entered into a partial settlement on the record in court. Pursuant to that agreement, plaintiff husband would pay $175 per week in child support for the parties' three children and $100 per week in maintenance for three years. The parties' stipulation imputed an annual income of $15,000 to the wife. Subsequently, during the trial on unresolved issues, the husband learned that in 2009 the wife had begun investing her inherited funds and, by the time of the stipulation, the wife had capital gains of $48,684 through 14 sales of stock and an adjusted gross income of $121,901 by year's end. However, as was revealed during the trial, despite having significant capital gains in 2009, the wife had losses of $27,740 between January 1 and June 29, 2010 and her unrealized losses had totaled $61,352 at the time of trial.

Based solely on the wife's recent and indisputably short-term success investing in the stock market, the court vacated the child support and maintenance provisions of the partial settlement and imputed an annual income to her of $50,000. "Stipulations of settlement are favored by the courts and not lightly cast aside" (*Hallock v State of New York*, 64 NY2d 224, 230; *see Borghoff v Borghoff*, 8 AD3d 519, 520; *see also* CPLR 2104). This is equally true with respect to agreements entered into by the parties to a divorce

action (*see Batson v Batson*, 277 AD2d 750, 751).  Hence, " '[o]nly where there is cause sufficient to invalidate a contract, such as fraud, collusion, mistake or accident, will a party be relieved from the consequences of a stipulation made during litigation' " (*Chernow v Chernow*, 51 AD3d 705, 706, *lv dismissed* 11 NY3d 780, quoting *Hallock*, 64 NY2d at 230; *see Przewlocki v City of Lackawanna*, 112 AD2d 757, 757).

The record here is devoid of proof that the wife was aware of the extent of her capital gains as of the October 21, 2009 stipulation. Moreover, while the wife had $48,684 in capital gains on the settlement date, capital gains, unlike salary or wages, are offset by any investment losses that occur during a given tax year.  Thus, treating the wife's capital gains on October 21st as income is the functional equivalent of declaring the margin of victory in a football game based on the score early in the fourth quarter.  While, as it turned out, the wife's capital gains increased through the end of 2009, it was, as of October 21st, possible that she could have sustained losses that would have reduced or even completely negated those gains by the end of the year.  The losses the wife sustained in the first half of 2010 alone support that potential outcome.  Thus, in my view, it was error for the court to void the partial settlement based on the wife's capital gains as of the date of the settlement.

As to imputed income, " '[c]ourts have considerable discretion to . . . impute an annual income to a parent' . . . , and a court's imputation of income will not be disturbed so long as there is record support for its determination" (*Lauzonis v Lauzonis*, 105 AD3d 1351, 1351).  As the majority observes, the decision whether to consider capital gains as income is discretionary (*see Orofino v Orofino*, 215 AD2d 997, 998-999, *lv denied* 86 NY2d 706).  However, in my view, there must be more than one year of capital gains to warrant imputing income for years into the future.  We can take judicial notice of the fact that, on March 9, 2009, the Dow Jones Industrial Average hit a 12-year low at the end of what has been called the Great Recession, but that by the end of that year the Dow rose by almost 60% from that low point (*see For Dow, another 12-year low*, http://money.cnn.com/2009/03/09/markets/markets_newyork/index.htm; *see also Dow Jones Indus. Average [DJIA] History*, http://www.fedprimerate.com/dow-jones-industrial-average-history-djia.htm; *see generally Destiny USA Holdings, LLC v Citigroup Global Mkts. Realty Corp.*, 69 AD3d 212, 222-223).  In contrast, while the Dow was relatively more stable during 2010 than it had been in 2009 (*see Dow Jones Indus. Average [DJIA] History*), the wife nevertheless sustained significant losses in that year.  The wife has a two-year degree, had not worked outside the home since 1994, and had never earned more than $18,000 from employment.  At no time from the beginning of the marriage, even after inheriting significant sums, had the wife ever demonstrated any particular knowledge of or success with investing. This would explain why the parties' partial settlement attributed income to the wife of only $15,000 per year.  The only reasonable conclusion based on this record is that the wife's capital gains in 2009 were a fluke resulting from a rapidly rising stock market.  Given her losses in 2010, it is clear that the wife was about as likely to

repeat her 2009 success as someone who wins the lottery or has a lucky streak at a casino.  As a result, the court also abused its discretion in imputing an annual income of $50,000 to the wife based on nothing more than one year of capital gains income.

Entered:  November 8, 2013                        Frances E. Cafarell
                                                  Clerk of the Court