Sconiers, J.
(dissenting in part). I agree with the majority with respect to all but two of the issues being decided on this appeal, and I therefore respectfully dissent in part. In my view, Supreme Court erred to the extent it vacated a portion of the parties’ partial settlement and also erred when it imputed an annual income of $50,000 to defendant wife. I would therefore further modify the judgment accordingly.
On October 21, 2009, the parties entered into a partial settlement on the record in court. Pursuant to that agreement, plaintiff husband would pay $175 per week in child support for the parties’ three children and $100 per week in maintenance for three years. The parties’ stipulation imputed an annual income of $15,000 to the wife. Subsequently, during the trial on unresolved issues, the husband learned that in 2009 the wife had begun investing her inherited funds and, by the time of the stipulation, the wife had capital gains of $48,684 through 14 sales of stock and an adjusted gross income of $121,901 by year’s end. However, as was revealed during the trial, despite having significant capital gains in 2009, the wife had losses of $27,740 between January 1 and June 29, 2010 and her unrealized losses had totaled $61,352 at the time of trial.
Based solely on the wife’s recent and indisputably short-term success investing in the stock market, the court vacated the child support and maintenance provisions of the partial settlement and imputed an annual income to her of $50,000. “Stipulations of settlement are favored by the courts and not lightly cast aside” (Hallock v State of New York, 64 NY2d 224, 230 *1272 [1984]; see Borghoff v Borghoff, 8 AD3d 519, 520 [2004]; see also CPLR 2104). This is equally true with respect to agreements entered into by the parties to a divorce action (see Batson v Batson, 277 AD2d 750, 751 [2000]). Hence, “ ‘[o]nly where there is cause sufficient to invalidate a contract, such as fraud, collusion, mistake or accident, will a party be relieved from the consequences of a stipulation made during litigation’ ” (Chernow v Chernow, 51 AD3d 705, 706 [2008], lv dismissed 11 NY3d 780 [2008], quoting Hallock, 64 NY2d at 230; see Przewlocki v City of Lackawanna, 112 AD2d 757, 757 [1985]).
The record here is devoid of proof that the wife was aware of the extent of her capital gains as of the October 21, 2009 stipulation. Moreover, while the wife had $48,684 in capital gains on the settlement date, capital gains, unlike salary or wages, are offset by any investment losses that occur during a given tax year. Thus, treating the wife’s capital gains on October 21st as income is the functional equivalent of declaring the margin of victory in a football game based on the score early in the fourth quarter. While, as it turned out, the wife’s capital gains increased through the end of 2009, it was, as of October 21st, possible that she could have sustained losses that would have reduced or even completely negated those gains by the end of the year. The losses the wife sustained in the first half of 2010 alone support that potential outcome. Thus, in my view, it was error for the court to void the partial settlement based on the wife’s capital gains as of the date of the settlement.
As to imputed income, “ ‘[c]ourts have considerable discretion to . . . impute an annual income to a parent’ . . . , and a court’s imputation of income will not be disturbed so long as there is record support for its determination” (Lauzonis v Lauzonis, 105 AD3d 1351, 1351 [2013]). As the majority observes, the decision whether to consider capital gains as income is discretionary (see Orofino v Orofino, 215 AD2d 997, 998-999 [1995], lv denied 86 NY2d 706 [1995]). However, in my view, there must be more than one year of capital gains to warrant imputing income for years into the future. We can take judicial notice of the fact that, on March 9, 2009, the Dow Jones Industrial Average hit a 12-year low at the end of what has been called the Great Recession, but that by the end of that year the Dow rose by almost 60% from that low point (see For Dow, another 12-year low, http://money.cnn.com/2009/03/09/markets/ markets_newyork/index.htm; see also Dow Jones Indus. Average [DJIA] History, http://www.fedprimerate.com/dow-jonesindustrial-average-history-djia.htm; see generally Destiny USA Holdings, LLC v Citigroup Global Mkts. Realty Corp., 69 AD3d *1273 212, 222-223 [2009]). In contrast, while the Dow was relatively more stable during 2010 than it had been in 2009 (see Dow Jones Indus. Average [DJIA] History), the wife nevertheless sustained significant losses in that year. The wife has a two-year degree, had not worked outside the home since 1994, and had never earned more than $18,000 from employment. At no time from the beginning of the marriage, even after inheriting significant sums, had the wife ever demonstrated any particular knowledge of or success with investing. This would explain why the parties’ partial settlement attributed income to the wife of only $15,000 per year. The only reasonable conclusion based on this record is that the wife’s capital gains in 2009 were a fluke resulting from a rapidly rising stock market. Given her losses in 2010, it is clear that the wife was about as likely to repeat her 2009 success as someone who wins the lottery or has a lucky streak at a casino. As a result, the court also abused its discretion in imputing an annual income of $50,000 to the wife based on nothing more than one year of capital gains income. Present — Scudder, EJ., Fahey, Sconiers and Valentino, JJ.